637 So.2d 840 (1994)
Roger MATHES,
v.
The MISSISSIPPI BAR.
No. 92-BA-00420.
Supreme Court of Mississippi.
June 2, 1994.
*842 Roger Mathes, pro se.
Charles J. Mikhail, State Bar, Michael B. Martz, Jackson, for appellee.
Before En Banc.
JAMES L. ROBERTS, Jr., Justice, for the Court:
Attorney Roger Mathes accepted $1215.52 in fees from two bankruptcy clients, without first petitioning the bankruptcy court for approval of such compensation as required under bankruptcy law. Mathes later signed a court order agreeing to tender the $1215.52 to the Chapter 7 Trustee within 90 days. A judgment in that amount was entered against him six months later. Mathes failed to pay the trustee, and the Bar filed a Formal Complaint against him. The Complaint Tribunal suspended Mathes from the practice of law for one year. Mathes appeals the penalty:
THE ONE YEAR SUSPENSION IS TOO SEVERE A PENALTY FOR APPELLANT'S ACTS.
We affirm the Tribunal's findings that Mathes violated several Rules of Professional Conduct, and reduce the penalty to six months suspension from the practice of law.

FACTS AND PROCEDURAL HISTORY
The Mississippi Bar filed a Formal Complaint against Mathes on August 21, 1991, charging that he had accepted $1,215.52 from his bankruptcy clients, James and Jimmy Lofton, without first petitioning the Court for approval of such compensation. It further charged that Mathes had signed a court order agreeing to tender the $1,215.52 to a bankruptcy trustee within ninety days, but had failed to do so. The Bar alleged that these actions violated Mississippi Rule of Professional Conduct 1.15(b) (concerning notification and delivery of property to clients or third persons); Rule 3.4(c) (concerning obedience to tribunal rules); and Rule 8.4 (concerning violation of the rules of professional conduct, and conduct involving dishonesty, fraud, deceit or misrepresentation, or prejudicial to the administration of justice).
On August 21, 1991, a Complaint Tribunal was appointed to hear Mathes' case. On August 22, 1991, Mathes executed the "Acknowledgment of Receipt of Summons and Formal Complaint." Mathes' answer to the complaint, filed November 5, 1991, denied any violation of the Disciplinary Rules.
A hearing was held before the Complaint Tribunal on March 24, 1992, at which Mathes appeared pro se. Counsel for the Bar sought to introduce "Stipulations And Admissions As To Facts and Documents" reached by the Bar and Mathes. The stipulations, admitted into evidence as Exhibit 1, included the following:
In connection with Cause Numbers 87-00425 and 87-00427 in the United States *843 Bankruptcy Court for the Northern District of Mississippi, styled, In Re: James E. Lofton, Jr. and Jimmie Lee Lofton, filed on March 2, 1987, under 11 U.S.C. Chapter 11, Mr. Mathes accepted the total sum of $1,215.52 in fees and expenses from the debtors in possession (Composite Exhibit "1"  copies of a receipt in the sum of $300 dated July 24, 1987; a check in the sum of $790.52 dated December 2, 1987; and a check in the sum of $125 dated April 20, 1988), without obtaining prior approval of or filing an application for approval with the Court for Mr. Mathes to receive such compensation, in violation of 11 U.S.C. Sections 330 and 331 and Rule 2016 of the Federal Rules of Bankruptcy Procedure.
On or about June 6, William F. Baity, the United States Trustee, Region V, Districts of Louisiana and Mississippi, and Ronald H. McAlpin, Assistant United States Trustee, through their counsel, the Honorable R. Michael Bolen (Mr. Bolen), Senior Attorney for the Office of the United States Trustee, filed a Complaint for Turnover (Exhibit "2") seeking an Order compelling Mr. Mathes to turn over all estate property to the Chapter 7 Trustee (the case was converted to a Chapter 7 from a Chapter 11), Jeffrey A. Levingston (Chapter 7 Trustee).
On or about July 10, 1989, Mr. Mathes filed his Answer (Exhibit "3") to the Complaint for Turnover.
On or about June 29, 1990, Mr. Mathes signed an Order (Exhibit "4") agreeing to tender the sum of $1,215.52 to the Chapter 7 Trustee within ninety (90) days. The Order was entered on July 3, 1990.
On or about January 9, 1991, Mr. Bolen filed a Motion for Entry of Judgment (Exhibit "5") due to Mr. Mathes' failure to comply with the Order of July 3, 1990.
On January 11, 1991, a Judgment (Exhibit "6") in the sum of $1,215.52 plus interest, on which execution may issue, was entered against Mr. Mathes for his failure to tender the sum of $1,215.52 to the Chapter 7 Trustee as agreed to by Mr. Mathes and required by the Order of July 3, 1990.
Despite repeated representations by Mr. Mathes that he would comply with the Order of July 3, 1990, he has not done so as of August 15, 1991.
After the stipulations were admitted into evidence, Mathes was examined by Bar's counsel. Mathes stated that he had been practicing law in Greenwood for nineteen years; that about thirty percent of his practice was Chapter 7 and Chapter 13 bankruptcy; and that the Loftons' case was the first and only Chapter 11 bankruptcy case he had undertaken. Mathes stated that he had not made any efforts to satisfy the judgment against him with the trustee's office. He stated that he was familiar with Rule 1.15, admitted to signing the agreed order to tender the funds, and admitted that he had not appealed the judge's order. However, he stated, "(n)o one, clients or trustees, have asked for any money." Mathes also said that he "(didn't) believe that the trustee or anybody else other than myself are entitled to those funds." He stated that he "did not need approval to accept those funds at the time (he) accepted them." The following exchanges were typical:
Q. Is it your position that regardless of the finality of that order that you are still entitled to hold on to those funds?
A. I'm the only one that has a legitimate claim. I did the work for that money and for much more money that was owed to me. The trustee has no claim; my clients have no claim; the trustee has never made a complaint; the clients have never made a complaint.. Just some anonymous person filed this with the Bar, and then your office filed a complaint against me.
Q. Mr. Mathes, the question I'm leading to is do you believe today that the trustee is to receive that $1215.52 or not?
TRIBUNAL: Yes or no, and then if you have an explanation you can explain.
THE WITNESS: Yes. Under the agreed judgment he does.
TRIBUNAL: Why haven't you paid it, then?
THE WITNESS: Well, in my opinion there's no one other than I that is entitled to that money. That would lead to more *844 legal proceedings, hearings, and eventual ruling that I'd be entitled to it.
Q. (Y)ou have not promptly delivered or delivered at all the funds to the trustee, correct?
A. That is correct.
Q. And, therefore, you are in violation of Rule 1.15(b), are you not?
A. Technically, I probably am.
Mathes denied representing to the bankruptcy court that he would pay the sum of $1215.52 to the trustee:
Q. Mr. Mathes, did you not make a representation to the court by signing onto an agreed order that you would tender those funds?
A. No. I agreed that if I did not tender the sum in 90 days that a judgment would be enrolled against me.
Q. Is that not a representation that you would tender those funds within the 90 days?
A. I don't believe so. That was agreement that if those sums were not tendered that a judgment would be taken against me.
Questioned as to his intentions in signing the agreed order, Mathes was similarly obtuse:
Q. Mr. Mathes, what was your intention when you signed onto the agreed order? Were you intending to pay it at all?
A. I thought 
Q. To tender it to the trustee?
A. I thought that would be the end of it because I knew the trustee did not have a claim against it and the clients did not have a claim against it, and nobody's made a claim against it up to this date.
Q. Are you saying that you signed onto the agreed order to tender those funds within 90 days but had no intention to comply with that agreed order? Is that what you're saying?
A. The agreed order said if I did not pay it within 90 days a judgment would be taken against me.
* * * * * *
TRIBUNAL: I don't think you've answered his question. I think he's asked you a question regarding what you intended to do at the time that you signed the agreed order.
A. Okay. My intent was not to pay it unless somebody made a claim against it.
Q. Your intention was not to comply with the agreed order that you signed onto; isn't that correct?
A. I did not intend to pay that judgment unless the trustee or the clients made a claim against it, which they have not.
Mathes also asserted that he had made no representations to the bankruptcy court that he would comply with the order: Rather, Mathes asserted, the representations had been made to Bar's counsel, Brian Callaway:
Q. Mr. Mathes, isn't it true that you have made representations and assurances that you would pay that sum?
A. To whom?
Q. That you would tender that sum to the court, to the trustee?
A. Not to the bankruptcy court.
* * * * * *
Q. (W)ho were the representations made to?
A. I believe Brian Callaway, formerly with the State Bar.
Q. So your interpretation of Paragraph 13 of the stipulation is that the representations were not to the court by way of the agreed order or otherwise; is that correct?
A. To the bankruptcy court?
Q. To the bankruptcy court.
A. That's correct. There's been no action in the bankruptcy court whatsoever on this matter.
Mathes' answer to the bar's informal complaint against him was accepted into evidence as Exhibit 3. Relevant excerpts follow:
I was unaware at the time that the deadline for Court approval of fees and expenses is as short as it is. But, my clients did not suffer because of this and the only person in the world that this affected is me.
* * * * * *

*845 Legally and ethically when I took the money for fees and expenses it was proper and belonged to me. But, I failed to timely file for approval. If I had filed timely there is no question it would have been approved.
* * * * * *
I am unaware of any false statement made by me. I consented to the agreed order because I did not timely file for approval. I did deserve the fees and expenses but that's my tough luck.
* * * * * *
I have not as of this date paid the judgment but it will be paid in full shortly. I know there is no valid excuse for this but please consider the following.
In January, 1991, a business partner embezzled everything I had, left me with two huge loan notes that I signed for him and left me past due on many bills. By June, 1991 I was just about back on my feet and agreed to the ninety days thinking it would not be a problem.
Since then, without the benefit of health insurance, I have been hospitalized twice, once in Jackson and once in Greenwood, and have had surgery and extensive treatment.[1] It is a major problem for me trying to pay the hospitals, doctors, etc.
This judgment against me will be paid on or before March 13, 1991 (sic). I would again emphasize that the only person that is hurt by my error is me.
Questioned about this Answer, Mathes agreed that he had represented therein that he would obey the court order. He explained that he had intended to obey it, but found himself in financial difficulty. He admitted that he had made no motion to extend the 90 day period in the order; nor had he presented to the court any evidence of hardship. Mathes was also evasive in his answers as to when, exactly, he had intended to pay the money.
The Bar offered two prior informal admonitions against Mathes, unrelated to the case at bar.[2] The Tribunal stated that it would consider them "in the matter of aggravation."
The Tribunal then examined Mathes, specifically asking him what was his present intent regarding the payment of the money. It found Mathes' answers evasive. Questioned by the Tribunal as to his financial situation, Mathes stated that he had not filed for bankruptcy, and that he had property which included household goods and office equipment.
Mathes declined to argue on his own behalf. The Bar stated that it had no recommendation as to punishment. The Tribunal recessed, and upon return, stated its unanimous finding that Mathes had violated Rule 1.15(b); its unanimous finding that he had violated Rule 3.4(c), and a two to one finding that he had violated Rule 8.4(a), (c), and (d). The Tribunal stated:
The Tribunal has considered the evidence and was not satisfied at all that Mr. Mathes attempted to truthfully explain his defenses in this matter and appeared evasive to questions and to the Tribunal.
Further, it's the opinion of this Tribunal that his difficulties are compounded by his attitude at the time that he entered into the agreed judgment on June 29, 1990, in that we are of the opinion that he considered himself to be judgment-proof and that's the reason that he agreed to enter into the judgment to begin with, considered also his statement at that time that he did not intend to pay it.
The Tribunal's Opinion and Judgment, filed April 7, 1992, essentially adopted as its findings the "Stipulations and Admissions" cited above. The Tribunal also found that by his own admission, Mathes had never had any intention of tendering the sum to the Chapter 7 Trustee, either at the time he signed the July 3, 1990 court order, or at any other time. The Tribunal found that Mathes *846 had violated Rule 1.15(b), Rule 3.4(c), and Rule 8.4(a, c, & d). Mathes was ordered to pay the $1,215.52 plus interest, and was suspended from the practice of law for one year.
Mathes filed his appeal of the judgment on May 1, 1992.

DISCUSSION OF ISSUE

THE ONE YEAR SUSPENSION IS TOO SEVERE A PENALTY FOR APPELLANT'S ACTS.
Mathes submits that the underlying purposes of Federal Rule of Bankruptcy Procedure 2016, requiring attorneys to disclose their fees to the Bankruptcy Court, are to protect the debtor from overcharging, and to insure that creditors receive their fair share. Mathes argues that in this case, the debtor was "vastly undercharged," and therefore, while "(he) did not follow the letter of the law but the spirit of the law was fulfilled." Mathes also offers the following explanation for his failure to report or submit his fees for approval:
Appellant could not file this later because the U.S. Trustee that brought the suit threaten (sic) to object because it was not timely done. Therefore, appellant agreed to the judgment.
Further, Mathes argues that since "no living person, company, (or) corporation" was victimized by or suffered from his acts, a one year suspension is too severe a penalty. Finally, Mathes argues that under Culpepper v. Mississippi State Bar, the purpose of sanctions is to protect the public, not to punish the attorney. He submits that he is no danger to the public, and that his suspension would be punitive, and of no benefit to the public; serving only to "ruin his career and life." Mathes requests that this Court void his suspension.
The Bar argues that Mathes engaged in misrepresentation and open defiance of the Bankruptcy Court, and that a one-year suspension was appropriate under the circumstances of the case and this Court's decisions. The Bar contends that there was no evidence of extenuating circumstances such as ill health or matters of personal distress; while Mathes alluded to financial and health problems, he never filed a petition, motion, or application for an extension of time on grounds of financial hardship or ill health. The Bar notes that Mathes' prior admonitions may be considered as an aggravating factor.

Law
This Court "has exclusive and inherent jurisdiction of matters pertaining to attorney discipline, reinstatement, and appointment of receivers for suspended and disbarred attorneys." Rule 1(a), Rules of Discipline. Mississippi Bar v. Mathis, 620 So.2d 1213, 1218 (Miss. 1993); Underwood v. Mississippi Bar, 618 So.2d 64, 67 (Miss. 1993); Mississippi State Bar v. Blackmon, 600 So.2d 166, 171 (Miss. 1992). Rule 9.4 of the Rules of Discipline provides that on appeal, this Court "shall review the entire record and the findings and conclusions of the Tribunal, and shall render such orders as the Court may find appropriate." See Underwood, 618 So.2d at 67; Foote v. Mississippi State Bar Association, 517 So.2d 561, 564 (Miss. 1987). This Court's review of the evidence is de novo; it sits as a trier of fact and is not bound by a substantial evidence or manifest error rule. Mathis, 620 So.2d at 1219; Underwood, 618 So.2d at 67; Foote, 517 So.2d at 564. Nevertheless, deference may be given to the Tribunal's findings, due to its exclusive opportunity to observe the demeanor and attitude of the witnesses. Stegall v. The Mississippi Bar Association, 618 So.2d 1291, 1294 (Miss. 1993); Broome v. Mississippi Bar, 603 So.2d 349, 353 (Miss. 1992). Punishment for any violation of the Rules of Discipline is considered and imposed on a case-by-case basis, and is not governed by a set standard. Mathis, 620 So.2d at 1219; Underwood, 618 So.2d at 67; Vining v. Mississippi Bar Association, 508 So.2d 1047, 1049 (Miss. 1987). This Court may impose sanctions either more or less severe than the Complaint Tribunal. Broome, 603 So.2d at 353; Mississippi State Bar v. Strickland, 492 So.2d 567 (Miss. 1986).
When reviewing sanctions for misconduct, this Court considers:
(1) Nature of the misconduct involved;
(2) Need to deter similar misconduct;

*847 (3) Preservation of dignity and reputation of the legal profession;
(4) Protection of the public; and
(5) Sanctions imposed in similar cases.
Stegall, 618 So.2d at 1294; Culpepper v. Mississippi State Bar, 588 So.2d 413, 420 (Miss. 1991); Steighner v. Mississippi State Bar, 548 So.2d 1294, 1297-8 (Miss. 1989). The Court also consults the ABA Standards for Imposing Lawyer Sanctions; it has stated that such Standards "present helpful guidelines." Stegall, 618 So.2d at 1295. See also Blackmon, 600 So.2d at 173. The ABA Standard 3.0 states that in imposing sanctions, a court should consider:
(1) the duty violated;
(2) the lawyer's mental state;
(3) the potential or actual injury caused by the lawyer's misconduct; and
(4) the existence of aggravating or mitigating factors.

Rule Violations
Mathes was found to have violated Rule 1.15(b), which provides:
b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or property that the client or third person is entitled to receive ...
Generally, violations of Rule 1.15(b) are found where an attorney has comingled, converted, or otherwise mishandled a client's money. Such an act  the "cardinal sin" for lawyers  is rarely forgiven, and often results in disbarment. See, e.g., Haimes v. Mississippi Bar, 601 So.2d 851 (Miss. 1992); Reid v. Mississippi State Bar, 586 So.2d 786 (Miss. 1991); Mississippi State Bar v. Moyo, 525 So.2d 1289 (Miss. 1988); Foote v. Mississippi State Bar, 517 So.2d 561 (Miss. 1987).
In this case, it was not Mathes' clients, but rather a "third person"  the Chapter 7 Trustee appointed to administer the estate  who had an interest in the funds Mathes accepted from his clients. Mathes' failure to notify the Trustee and to deliver the attorneys fees to him did not result in the comingling of funds, nor other breach of fiduciary duty owed to clients. In short, Mathes did not commit the "cardinal sin." However, he did fail to comply with the law. Mathes was required under 11 U.S.C. 327 et seq. and Federal Rule of Bankruptcy Procedure 2016 to apply to the court for compensation for his services.[3] If there was any ambiguity as to Mathes' duty to turn over the funds to the Trustee, this was cleared up by the court order of July 3, 1990, which Mathes signed, agreeing to tender the $1215.52 within ninety days.
Mathes' failure to abide by the statutes and rules governing bankruptcy procedure did not "victimize" his clients. Nevertheless, his failure violated his duties to the profession and to the legal system. Surely, it must be made clear to Mathes and other attorneys that such failure to "play by the rules" is unacceptable. Of equal importance, the public must be assured that persons whom this state licenses to practice law will abide by the laws they are sworn to uphold.
Mathes was also found to have violated Rule 3.4(c), which provides in part:
(c) A lawyer shall not ... knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.
Again, Mathes' failure to turn over the attorneys fees to the Chapter 7 Trustee violated his duties to the profession and to the legal system. This was true even before the complaint for turnover was brought against him to recover the fees, and before he signed a *848 court order agreeing to remit the $1215.52 to the Trustee.
The exception in Rule 3.4(c) above certainly does not apply to Mathes' case; his refusal was neither open, nor based on an assertion that no valid obligation existed. Rather, Mathes' disobedience seems to have been premised on his opinion that 1) because he had performed work for his clients worth more than $1215.52, equity entitled him to that money, and 2) because neither the Trustee nor his clients had pursued him to recover the money, he could keep it.
The need to deter Mathes and other attorneys from ignoring court orders is self-evident. Also self-evident is the damage such disobedience causes to the reputation of the legal profession, and the need to protect the public from attorneys who would fail to respect a court's authority.
Mathes was also found to have violated Rule 8.4(a, c & d), which provides that it is professional misconduct for a lawyer to:
(a) violate or attempt to violate rules of professional conduct ...
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
(d) engage in conduct prejudicial to the administration of justice.
This is the "bread and butter" charge in attorney discipline cases; it accompanies almost any other charge in a bar complaint. Accordingly, the rationale for sanctions against Mathes for his Rules 1.15 and 3.4 violation applies as well to his violation Rule 8.4 violation.

Other Cases Involving Misrepresentation
Mathes' conduct may best be described as misrepresentation  specifically, misrepresentation to the bankruptcy court and the Trustee that he intended to turn over the attorneys fees paid to him by the Loftons.
In Mississippi Bar v. Mathis, 620 So.2d 1213 (Miss. 1993), we increased the sanction from public reprimand to a one-year suspension,[4] where an attorney had misrepresented to the court and opposing counsel that he and his client were awaiting the results of an autopsy, when in fact he had already caused the autopsy to be performed. The Complaints Tribunal and this Court found that by creating the impression that no autopsy had been performed, Mathis had violated Rules of Professional Conduct 8.4(a), (c), and (d), as well as the Mississippi attorney's oath. We stated:
The nature of Mathis' misconduct was deceit. The need to deter such acts is clear and pressing. Proliferation of similar actions would undoubtedly product serious adverse consequences for the reputation and dignity of the profession as well as a general erosion of the principle that our society accomplishes justice through adherence to the "rule of law."
Mathis, 620 So.2d at 1222 (Miss. 1993).
In Goeldner v. Mississippi State Bar Ass'n., 525 So.2d 403, we reduced sanctions from disbarment to two years suspension, where an attorney had willfully misrepresented to his client and the court the amount of fees due, as well as the number of hours spent working on a conservatorship, in order to obtain an hourly rate in excess of that allowed by the chancellor's order. This Court labelled such conduct a "fraudulent misrepresentation to the court and client," and held this a violation of DR1-102(A)(1, 4, 5, and 6), which correspond to the current Rule of Professional Conduct 8.4.
In Mississippi State Bar v. Smith, 577 So.2d 1249 (Miss. 1991), we increased sanctions from public reprimand to 60-day suspension and probation for 180 days, where an attorney had disobeyed a court order not to dispense of settlement funds without court order, and had deceived the court by filing false acknowledgement of a bank's receipt of settlement funds. We found that Smith had violated DR1-102(A)(1, 3, 4, 5, and 6). See also Pitts v. Mississippi State Bar Ass'n., 462 So.2d 340 (Miss. 1985) (sanctions reduced from a 180-day suspension to a 30-day suspension and public reprimand, where attorney had failed to establish savings account with client's funds, as directed by court, for *849 nine years after receiving funds; failed to account for these funds; and misrepresented to the client and chancellor as to the whereabouts of these funds during the interim).
We find that Mathes' conduct was not as egregious as that of the attorneys in Mathis and Goeldner, above, whose dishonesty harmed their clients as well as misleading the court. We find that Mathes' behavior is roughly analogous to that of the attorneys in Smith and Pitts. In imposing a suspension longer than those meted out to Smith (60 days) and Pitts (30 days), we note the following:
1) Mathes made no recorded efforts to obtain an extension of time in which to turn over the fees on grounds of hardship;
2) Mathes never truly acknowledged his wrongdoing. Throughout the hearing, his answers were evasive and uncooperative, and reflected a lack of interest in both the rules of discipline and bankruptcy.
Such indifference ill-befits an attorney. A six-month suspension may seem severe in light of the relatively small amount of money involved, and lack of harm to third parties. It is Mathes' indifference, compounded with his wrongdoing, which prompts the imposition of such penalty.

CONCLUSION
We affirm the Tribunal's findings that Mathes violated Rules of Professional Conduct 1.15(b), 3.4(c), and 8.4. We reduce his sentence to six months suspension from the practice of law. Prior to reinstatement, Mathes will be required to comply with the conditions of the January 11, 1991 judgment against him.
AFFIRMED IN PART; REVERSED AS TO PENALTY: PENALTY OF SIX MONTHS IMPOSED.
HAWKINS, C.J., DAN M. LEE, P.J., PITTMAN, BANKS and McRAE, JJ., concur.
SMITH, J., concurs in part and dissents in part with separate written opinion joined by PRATHER, P.J., and SULLIVAN, J.
SMITH, Justice, concurring in part dissenting in part:
I agree with the majority's affirmance of the Tribunal's findings that Mathes violated several Rules of Professional Conduct. However, I disagree that the appropriate sanction for Mathes should be six months suspension from the practice of law, rather than the one year suspension determined by the Tribunal to be appropriate under the facts of this case and previous decisions of this Court.
It is undisputed that Mathes accepted $1215.52 in fees from two bankruptcy clients without first petitioning the bankruptcy court for approval, and later signed a court order agreeing to tender the $1215.52 to the Chapter 7 Trustee within ninety (90) days. His failure to tender the agreed amount resulted in a judgment rendered against him. Mathes' explanation for his failure to pay was that "there's no one other than I that is entitled to that money," and that neither the trustee nor his clients had made a claim against it.
The Tribunal, having considered the evidence and observed Mathes' demeanor unanimously found that "they were not satisfied at all that Mr. Mathes attempted to truthfully explain his defenses in this matter and appeared evasive to questions to the Tribunal."
The Tribunal was concerned with Mathes' attitude at the time he agreed to the order of the bankruptcy court. They concluded that since Mathes knew he was judgment proof, Mathes made the representation to the Court that he would pay, when he had no intention of paying or complying with the court order.
Mathes did not appeal the Order of the Bankruptcy Court; did not file a Motion to Alter, Amend or Modify the Order, and admitted knowingly disobeying an Order of the Court to return the funds. However, the most serious infraction occurred when Mathes, according to his own testimony, made the representation to the bankruptcy court, by signing the agreed order, that he would tender the money within ninety (90) days when he had no intention of obeying the court order. Mathes made the same misrepresentation *850 to the Bar in his informal Answer to the Bar Complaint.
The Tribunal found Mathes guilty of infractions relating to all rules he had been charged with violating. The recommended sanction of one year suspension was proper. Mathes violated his duties to the profession and to the legal system by his wilful and flagrant ignoring of the court order.
This Court recently in Mississippi Bar v. Mathis, 620 So.2d 1213 (Miss. 1993), held that where Mathis had misrepresented to the court that an autopsy had not been performed, when in fact it had, the appropriate sanction would be a suspension of one year. Also, in Goeldner v. Mississippi Bar, 525 So.2d 403 (Miss. 1988), where Goeldner misrepresented the number of hours worked and the amount of fees due, this Court held that an appropriate sanction of two years suspension was required.
The one year suspension for Mathes' misconduct was proper under the facts of this case and our more recent decisions. The one year suspension was also proper under the ABA Standards for Imposing Lawyer Sanctions. Mathes was evasive during questioning by Judge Marcus Gordon, refused to acknowledge any wrongdoing, and maintained an attitude of indifference to making restitution. Mathes' wilful disobeying of the order of the bankruptcy court should not be considered lightly. This Court should also take into consideration Mathes' two prior disciplinary offenses in determining the appropriateness of the Tribunal's recommended one year suspension from the practice of law. I would uphold the Tribunal's findings and one year suspension.
PRATHER, P.J., and SULLIVAN, J. join this opinion.
NOTES
[1] On examination by the Tribunal, Mathes stated that his medical problems consisted of "a broken ankle and a bruised foot at separate times."
[2] One admonition, dated January 12, 1989, was for failure to comply with Rule 1.1, which concerns competent representation, and Rule 1.3, which concerns diligence and promptness in representation. The other, dated March 29, 1989, was for violation of Rule 1.4, which concerns informing clients about the status of their cases.
[3] Attorneys failing to comply with these rules do so at their peril. See, e.g., In re Fricker, 131 B.R. 932, 25 C.B.C.2d 764 (E.D.Pa. 1991) (an attorney's failure to timely file a Rule 2016 statement of compensation may eliminate the attorney's right to collect any fees); In re Rheuban, 121 B.R. 368, 24 C.B.C.2d 1083 (C.D.Cal. 1990) (an attorney's refusal to make timely disclosure of a fee or fee agreement as required by Bankruptcy Rule 2016 constitutes grounds for disgorgement of the fees).
[4] Originally, this Court increased the sanction from public reprimand to a 180-day suspension. On petition for rehearing, the Court increased the sanction to a one-year suspension.