462 So.2d 340 (1985)
Roy PITTS
v.
MISSISSIPPI STATE BAR ASSOCIATION.
Misc. No. 119.
Supreme Court of Mississippi.
January 9, 1985.
*341 Samuel H. Wilkins, Jackson, for appellant.
Andrew J. Kilpatrick, Jr., Jackson, for appellee.
En Banc.

ON PETITION FOR REHEARING
DAN M. LEE, Justice, for the Court:
This cause was originally decided on September 5, 1984. The appellant thereafter filed a Petition For Rehearing. Finding merit in that Petition, our original opinion rendered September 5, 1984, is hereby withdrawn and this one is substituted therefor.
This is an appeal from a decision of the Mississippi State Bar Complaint Tribunal wherein the appellant, Roy Pitts, was found guilty of various infractions of the Code of Professional Responsibility of the Mississippi State Bar and thereafter suspended from practice for one hundred eighty (180) days. The disciplinary rules Pitts was found guilty of violating are DR 1-102; DR 6-101; DR 7-101, DR 7-102; and DR 9-102. Pitts was also found guilty of violating § 73-3-35 Miss. Code Ann. (1972), the oath of an attorney.
Feeling aggrieved by the decision of the Complaint Tribunal, Pitts brings this appeal and assigns as error:
(1) that this action is barred by the Statute of Limitations:
(2) that the Tribunal failed to show by clear and convincing evidence violation of certain Disciplinary Rules; and
(3) that the penalty imposed upon the Appellant was unduly harsh and disproportionate to the offense.
There is little dispute regarding the factual scenario in this cause. By his answer to the complaint, Pitts has admitted the facts upon which the complaint is based. His answer denied only that those facts constitute violations of the Code of Professional Responsibility.
On May 24, 1967, Roy Pitts, acting as the attorney for Gary T. Byrd, Sr., filed a petition in the Chancery Court of Lauderdale County seeking to have Byrd appointed as general guardian for Gary T. Byrd, Jr. The younger Byrd was to receive $2,520.68 as the result of being the beneficiary of a deceased uncle's life insurance policy. On the same date the chancery court entered a decree appointing Gary T. Byrd, Sr. as the general guardian for Gary T. Byrd, Jr. and as a result the insurance funds were disbursed to the elder Byrd. Pursuant to a petition for further instructions filed by Roy Pitts, the chancery court ordered that the insurance proceeds be invested in a savings account at Home Federal Savings and Loan Association of Meridian. The court further ordered that the court costs and expenses, together with an attorney's fee in the amount of $100 be paid from the proceeds.
When he and Pitts left the Lauderdale County Courthouse, Byrd endorsed the insurance check and gave it to Pitts. Byrd stated that he understood that Pitts was to put the money in the Home Federal Savings and Loan.
On July 18, 1967, Pitts deposited the check in his trust account and wrote himself a check for $100 as attorney's fee. It was not until June 22, 1976 that Pitts took the remaining insurance proceeds and deposited them in an account at Home Federal. This nine year delay in depositing the funds is the basis for the present action.
Gary Byrd, Sr. testified that on numerous occasions he asked Pitts about the money. He stated that he was aware of the requirement of annual accounts and also aware that no annual accountings had been filed in this cause. Byrd stated that he wrote letters and "at least one hundred attempts on the phone" to get Pitts to make some sort of accounting. Generally, Byrd was not able to get through Pitts' secretary but when he did Pitts assured him that everything was taken care of and that he would take care of the accountings.
Byrd moved several times between 1967 and 1973. He stated that normally after each move he would attempt to contact *342 Pitts to get the status of the account. Byrd testified that he had written Pitts at least ten personal letters with his return address on them between 1967 and 1980.
In 1970 or 1971, Byrd learned that there had been no account established when he contacted the Home Federal Savings and Loan directly. He stated that he again contacted Pitts and that Pitts assured him that "everything was fine" and that Byrd would soon be getting a report.
On October 7, 1980, Byrd met with Chancellor William Neville who had ordered the guardianship established. Byrd told him that he was never able to get any response regarding the status of the account or the guardianship. Chancellor Neville immediately called Pitts and told him to come to his office. At that time Pitts produced a pass book showing that the account had been established in 1976. By joint motion he was removed as counsel.
Chancellor Neville testified that from the date of the establishment of the guardianship in 1967 through the time Pitts was removed as counsel in 1980, Pitts never filed an accounting with the chancery court. Chancellor Neville stated that he had requested Pitts to file an accounting "many, many times." Chancellor Neville had talked to Pitts personally and had his court administrator attempt to contact Pitts about the failure to file accountings. Neville also testified that Pitts assured him "Judge, there is no need to worry. The money is safe and on deposit." Chancellor Neville first learned of the nine year delay in depositing the funds at the October 7, 1980 meeting with Byrd and Pitts.
Roy Pitts testified that in 1967 he was running for the State Senate and was very much preoccupied. He corroborated the details of receiving the insurance check, depositing it in his trust account and immediately paying himself the attorney's fee. It was established that at the time Pitts finally made the deposit in 1976 he deposited the amount of $3,909.29. This Pitts explained represented both the principal and the interest the money would have accumulated during the interim. Pitts had added the sum he calculated as interest which would have been earned on the account for nine years and paid it from his own pocket.
Pitts stated that "It was just procrastination" that caused him to delay in making the deposit. He testified he never used the funds for his own benefit and that he personally paid the annual premium on the guardian bond of $22.50. Each time the matter came to his attention he simply neglected it. After being contacted by Byrd he did not want to admit his neglect because he was embarrassed and so he did not deposit the money right away. Pitts could not figure out how to explain what had happened to the money in the interim period so he kept putting it off. He also delayed because he did not have the money to pay the interest the principal would have accumulated.
Pitts admitted that he received routine notices of the need to file an accounting but was afraid to do so both before and after he made the deposit because he could not account for the lengthy delay. He also admitted telling Byrd and his wife that everything was all right when he knew in fact that that was not the truth.
The rest of Pitts' testimony was essentially a plea for mercy based on numerous personal problems which it would serve no purpose to detail here but which are substantial indeed.

THE LAW
Pitts' first assignment of error is that this action is barred by § 15-1-49 Miss., Coded Ann. (1972), which imposes a six year limitation on all actions "for which no other period of limitation is prescribed." As there is no other limitation on disciplinary actions in Title 73, Chapter 3 of the Mississippi Code, Pitts argues that the six year period in § 15-1-49 is applicable. This point has not previously been discussed by this Court; however, the appellee cites authority from a number of jurisdictions to the effect that a general statute *343 of limitations does not bar disciplinary proceedings.
Pitts argues that because Byrd knew of the failure to open an account at Home Federal in 1970 or 1971 the six year period would have long since run. That argument is misguided as Byrd's knowledge is inconsequential. The continuing failure to open the account until 1976, the failure to file any accounting through 1980, the knowing misrepresentation to both Chancellor Neville and to Byrd through 1980 are all matters which did not come to the attention of Chancellor Neville, the person at whose instance the original complaint was filed, until 1980. Based on the record, the State Bar had no way of knowing of Pitts' failure to establish the guardianship account until 1980 when he was called into Chancellor Neville's office. Therefore, even if § 15-1-49 were applicable to disciplinary proceedings it could in no way be a bar to the instant action.
Pitts' second assignment of error is that he was not guilty of misconduct as defined in the disciplinary rules. Essentially he argues that he was negligent but not possessed of a fraudulent intent. This assignment of error is not well taken. It was established and admitted by Pitts that he was not truthful to his client about the funds and was also not truthful to Chancellor Neville. All of the allegations in the complaint were admitted and only the legal conclusions denied. Pitts also acknowledged having received several notices of the requirement to account and having ignored them or disobeyed them. He stated he did not know the whereabouts of his client but Byrd testified that he had written to Pitts on at least ten occasions and called him "hundreds of times." By his own testimony, Pitts admitted to deliberately misleading his client and the chancellor. Although in his brief Pitts argues that "there is not the bare suggestion throughout the testimony before the tribunal that appellant intended or willed the events which transpired." Pitts acknowledged that he not only deceived his client and the chancellor but also purposely continued to delay in opening the account and refused to file annual accountings because he was "embarrassed" by the truth and afraid of its consequences. There is therefore no merit to Pitts' weight of the evidence argument.
Pitts' final assignment of error is that the 180 day suspension from practice is an unduly harsh punishment. We agree. Pitts argues that his personal and family problems, along with his lack of intent to defraud his client, should weigh in favor of a less severe punishment. These arguments are persuasive. The theory behind punishment imposed as the result of Bar disciplinary proceedings is that that punishment, like a criminal sanction, serves a three-fold purpose. First, there is the obvious intent to punish the wrongdoer to the degree that the sanction is appropriate for the offense. Secondly, many theories on the role of sanctions recognize their utility as a deterrence to further violations both on the part of the immediate offender and the general community. Finally, sanctions have a definite role in reinforcing the confidence of the general public in the ability of society to govern itself. This third role is particularly important in regard to Bar disciplinary proceedings because our profession assumes the responsibility of governing its members. Therefore, public confidence and faith in the integrity of the entire Bar is dependent upon our willingness to impose appropriate sanctions on our members who have violated the Code of Professional Responsibility.
In the instant case, Roy Pitts has undeniably deceived both his client and the Chancery Court of Lauderdale County; however, based upon this record and the recognized purposes of punishment, we are of the opinion that the 180 day suspension issued to Roy Pitts was unduly harsh. We therefore reduce that punishment to a thirty (30) day suspension and a public reprimand. Following the completion of the thirty (30) day suspension, Pitts is free to pursue reinstatement under § 73-3-337 *344 Miss. Code Ann. (Supp. 1983) and Rule 12 of the Rules of Discipline for the Mississippi State Bar, adopted September 7, 1983.
Based on all of the foregoing, the decision of the Complaint Tribunal is affirmed as modified and it is hereby ordered that Attorney Roy Pitts be suspended from the practice of law for a period of thirty (30) days and issued a public reprimand. It is further ordered that this suspension shall commence thirty (30) days after the date on which this opinion and judgment become final. Furthermore, it is ordered that thirty (30) days after this opinion and judgment become final, the Clerk of the Supreme Court of Mississippi shall forward an attested copy to the Circuit Court Judges and Chancellors in and for Lauderdale County, Mississippi, with instructions to the senior judges of each court to include a copy of this opinion and judgment upon the minutes of their respective courts. Furthermore, it is ordered that the Clerk of the Supreme Court of Mississippi shall immediately forward the attorneys of record for the parties herein a copy of this opinion and judgment. It is also ordered that thirty (30) days after this opinion and judgment become final the Clerk of the Supreme Court of Mississippi shall forward an attested copy to the Clerks for the Federal District Courts, Northern and Southern Districts of Mississippi, and to the Clerk of the United States Court of Appeals for the Fifth Circuit, and to the Clerk of the United States Supreme Court. It is further ordered that the State Bar is entitled to recover from Roy Pitts the sum of $98.84 as previously assessed by the Committee on Complaints, together with all actual and reasonably necessary costs and expenses occasioned by the litigation of this matter.
IT IS SO ORDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.