667 So.2d 7 (1996)
Jesse B. GOODSELL a/k/a J.B. Goodsell
v.
The MISSISSIPPI BAR.
No. 94-BA-00142-SCT.
Supreme Court of Mississippi.
January 11, 1996.
*8 Andrew J. Kilpatrick, Jr., Hickman Sumners Goza & Gore, Jackson, MS, for appellant.
J.B. Goodsell, Clinton, MS, pro se.
Michael B. Martz, Jackson, MS, for Appellee.
En Banc.

ON PETITION FOR REHEARING
SULLIVAN, Presiding Justice, for the Court:
The original opinions are withdrawn and these opinions are substituted therefor.
Kerry Prisock prepared a Motion for Temporary Restraining Order (hereinafter MTRO) on behalf of his client, Herschel L. Woodward, which, on September 4, 1992, Jesse B. Goodsell filed in the Chancery Court of Hinds County, Mississippi.
A temporary restraining order (hereinafter TRO) was granted by Chancellor Stuart Robinson on September 4, 1992. Shortly thereafter a Motion To Dissolve Temporary Restraining Order was filed urging among other things that the signature on the MTRO was not Woodward's as has been represented to the court by Goodsell. Woodward's signature on the MTRO had been notarized by Prisock who testified that he saw Woodward sign the document with his left hand. After a hearing on September 17, 1992, Chancellor Robinson entered an order dissolving the TRO. The chancellor also entered an order requiring Woodward to appear before a deputy chancellor clerk and sign his name fifteen times. On December 10, 1992, the Chancellor *9 held a hearing on a Motion For Sanctions and Thomas L. Packer, Director of the Jackson Police Department Crime Laboratory, reviewed the documents that were submitted to him pursuant to court order which included the MTRO as well as the fifteen signatures.
Packer was accepted by the court as a handwriting expert. He testified that the signature on the MTRO was not the same as the signatures given to the deputy chancery clerk by Woodward. Goodsell cross-examined Packer on the authenticity of the signature on the MTRO.
Goodsell then offered Prisock on the authenticity of the signatures. Prisock stated that he witnessed Woodward sign his name with his left hand.
After the cross-examination of Prisock, Chancellor Robinson stated that he was going to subpoena Woodward to testify in the afternoon of the same day if he had to handcuff him and put him in shackles. Somehow the deputies could not find Woodward despite speculation that he was seen earlier at Goodsell's office. During the interim, Goodsell met in chambers with the chancellor and told him that he was the one who had signed the MTRO and not Woodward. When Goodsell was put on the witness stand by the court in the afternoon the following conversation transpired:
Q: [W]ould you tell me whether or not the signature [which] is said to be Herschel Woodward's is in fact his signature?
A: No, sir, it is not his signature.
Q: Will you tell me whose signature it is, or who wrote his name on there?
A: Your Honor, I'm not certain, but I believe it was me.
Q: Well, either it was or wasn't.
A: That morning Mr. Woodward and his father was [sic] in Kerry's [Prisock's] office down on Fortification Street. Mr. Woodward did indeed have a cast on his hand and was unable to write. We went over the Temporary Restraining Order with them. And I'm not certain who signed it. It was liable to have been me, and it probably was.
On December 11, 1992, Chancellor Robinson entered an order barring Goodsell and Prisock from the practice of law in Division 1 of the Fifth Chancery Court District indefinitely. Subsequently, Chancellor W.O. Dillard followed with a similar order for Division 2. On November 22, 1993, the Complaint Tribunal conducted a hearing at which Chancellor Robinson stated that he would not have had a problem with Goodsell signing the document if there was something wrong with Woodward which made him unable to sign and that this problem was presented to the court. At the Tribunal hearing, Goodsell unequivocally admitted that the signature on the MTRO was his. Goodsell said that he hedged on his answer on December 10, 1992, before Chancellor Robinson because he thought he should talk with an attorney before answering the question. Chancellor Robinson stated that he thought Goodsell should be publicly reprimanded, and after the Tribunal hearing both Chancellor Robinson and Chancellor Dillard reinstated Goodsell to practice before their courts.
The Tribunal found that Goodsell had violated Rules 3.3(a)(4), 3.3(d), 3.4(b), 4.1(a), (b), and 8.4(a), (c), and (d) of the Mississippi Rules of Professional Conduct and imposed a six month suspension for the practice of law of Jesse B. Goodsell.
Goodsell presents this Court with three issues on appeal.
The Bar filed a cross-appeal asking this Court to impose more stringent discipline.

I.

Does the record contain clear and convincing evidence that Goodsell violated the rule cited above and, if not, did the Tribunal err in imposing discipline based upon those rules?
The Bar has the burden of proof to show by clear and convincing evidence that Goodsell violated the Rules. Terrell v. Mississippi Bar, 635 So.2d 1377, 1384 (Miss. 1994).
Goodsell admits that he was less than candid about telling the lower court that he *10 signed the MTRO, nevertheless, he contends that he did not violate any of the rules of professional conduct except, perhaps, Rule 8.4(d) by allowing "an unnecessary hearing to be conducted." "A lawyer shall not knowingly ... offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures." Miss.R.Prof.Conduct 3.3(a)(4). Goodsell misconstrues the thrust of the charges against him when he argues that there is not a scintilla of evidence to suggest that the assertions made in the MTRO were not true and correct. However, the hearing was held for one purpose only: to establish the validity of the signature, not to test the accuracy of the facts contained within the MTRO. At this hearing, who signed the MTRO became the material evidence, not the contents of the motion itself. Goodsell knew he had signed the motion from the outset. Goodsell claims that he took remedial action by telling Chancellor Robinson the truth. When Prisock did not tell the truth from the witness stand, Goodsell could have removed any shadow cast upon his veracity by admitting to the signature before the hearing ever took place, or before his client was subjected to producing fifteen signatures for verification. There is clear and convincing evidence that Goodsell is in violation of Rule 3.3(a)(4).
"In an ex parte proceeding, a lawyer shall inform the Tribunal of all material facts known to the lawyer which will enable the Tribunal to make an informed decision, whether or not the facts are adverse." Miss.R.Prof.Conduct 3.3(d). The Tribunal determined that Goodsell's failure to inform Chancellor Robinson of the nature of the signature was a "material fact." The chancellor testified that if he had known about the circumstances surrounding the MTRO, then the fact that Goodsell signed would not have made a difference. Simply because the chancellor may have granted the MTRO anyway does not necessarily make the fact immaterial. The import of what the chancellor testified was this: it is one thing to tell him up-front that the signature belonged to the attorney, but is quite another to never reveal that fact. From other testimony in the record it is apparent that Woodward was not even present in the room when Goodsell signed Woodward's name to the motion. That is also a material fact. There is clear and convincing evidence that Goodsell is in violation of Rule 3.3(d) as the Rule calls for admission even if the facts are not adverse.
"A lawyer shall not ... falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law." Miss.R.Prof.Conduct 3.4(b). Goodsell argues that "there is absolutely no evidence to suggest that documentary evidence was falsified by Goodsell." What Goodsell did do was place a witness, Prisock, on the stand to testify that someone other than Goodsell signed the motion for TRO. Goodsell knew that that was the testimony that would be offered by Prisock and, even if he did not he went so far as to rehabilitate Prisock after cross-examination of him by opposing counsel. All of this was an attempt to convince the chancellor that a falsehood was a fact. The person in the court room that had absolute knowledge that it was a falsehood was Jesse B. Goodsell. That action was a crystal clear violation of Rule 3.4(b).
In the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person; (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client.
Miss.R.Prof.Conduct Rule 4.1(a) and (b). At the outset the Bar concedes that the Tribunal was in error to find Goodsell in violation of Rule 4.1(b) as there is absolutely no evidence that Goodsell's failure to disclose a material fact was necessary to avoid assisting a criminal or fraudulent act by a client. There is no allegation that Woodward did anything criminal or fraudulent. As to the Tribunal's finding of a violation of Rule 4.1(b), that finding is reversed and rendered in favor of Goodsell. The comment to Rule 4.1 states that "[w]hether a particular statement should be regarded as one of fact depend on the circumstances." The Comment further states that "[m]isrepresentations can also occur by failure to act." The signature *11 became a material fact when opposing counsel filed the Motion To Dissolve The Temporary Restraining Order. Goodsell sat by and allowed fifteen exemplars to be taken from Woodward without ever notifying the court that this action was unnecessary because he himself signed the MTRO. Goodsell argues that he thought the true issue was the failure to allege irreparable harm in the MTRO and that he did not view the signature as significant. Obviously, the signature issue was significant to the court to the extent that it subpoenaed Woodward to provide exemplars of his handwriting and conducted a hearing with an expert's opinion. Goodsell went so far as to cross-examine the expert witness when Goodsell had personal knowledge that the signature did not belong to Woodward. This is clear and convincing evidence of violation of Rule 4.1(a).
It is professional misconduct for a lawyer to: (a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another; ... (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; (d) engage in conduct that is prejudicial to the administration of justice ...
Miss.R.Prof.Conduct 8.4(a), (c) and (d). Goodsell admits that there is no question that he could have resolved the signature issue prior to the December 10th hearing but claims that his failure to do so does not rise to the level of dishonesty or deceit because it was not a repeated offense as the comment to the rule suggests.
In Mississippi State Bar v. Attorney D., 579 So.2d 559 (Miss. 1991), we sanctioned an attorney with only a private reprimand because of his candor and humility with the court on his misconduct in falsely representing to a client that a lawsuit had been filed. While Goodsell admitted to the Tribunal that he was wrong, he did not exemplify such humility and candor with the chancery court. In fact, he admitted to the Tribunal that he changed his confession from what he said in chambers to his sworn testimony in open court.
It needs to be repeated that the issue before us is not whether or not the contents of the MTRO were truthful, the issue is Goodsell's lack of candor with the court once the signature in the document was identified as a forgery. The fact that the method in which the signature was affixed to the document would not have changed the truth of its allegations is beside the point.
Goodsell did exemplify some degree of remorse for his actions to the Tribunal, but the record reflects that he only came forward when Chancellor Robinson made it clear that he was going to expose his wrongdoing.
Furthermore, Goodsell deliberately deceived the court by placing Prisock on the witness stand during the December, 1992 hearing and questioning him regarding the authenticity of the signatures when he knew he himself signed the MTRO. There is no reason that Goodsell would need Prisock to testify as to the validity of the signature when Goodsell knew that it was a forgery. Goodsell could have admitted to the court at this time that the signature was a forgery and was executed by him.
Rule 8.4(a) was violated. Goodsell was dishonest with the trial court and is in violation of Rule 8.4(c) regardless of whether the evidence of fraud or deceit were met. Furthermore, because Goodsell delayed the court from determining the truth of who signed the MTRO and whether it was valid, Goodsell impeded the administration of justice and violated 8.4(d).

II.

Should the Tribunal have given greater weight and consideration to the opinion and recommendation of Chancellor Stuart Robinson and considered the affidavit of Chancellor W.O. Dillard in determining the appropriate discipline to be imposed?
Goodsell argues that the chancellor viewed Prisock's behavior as being the more egregious:
Q: All right, Mr. Prisock. Here again, the greater part of the perjury I would have to say was committed by you because you took the stand as a sworn witness. That doesn't leave Mr. Goodsell implied to the Court that this individual had, in fact, *12 signed this thing and attempted to prove it through you when, based upon what he said, he had to know it was his own signature and not that of Herschel Woodward. But you took the stand and testified that this man came in with a cast on his arm and implied to the Court the reason the signatures were different was because he wrote with his left hand.
"Actions by other courts or by local bar associations are cumulative" to that issued by this Court, including the Tribunal. See Miss.R.Disc. 1(c). The Tribunal does not, as a matter of law, have a duty to defer to the chancellor's opinions. Deference is accorded to the Tribunal's findings. However, whether the Tribunal should have accorded more weight to Chancellor Robinson's opinion becomes less significant since "this court has the non-delegable duty of ultimately satisfying itself as to the facts... ." Mississippi State Bar v. Varnado, 557 So.2d 558, 559 (Miss. 1990). See also Mississippi Bar v. Attorney R., 649 So.2d 820, 824 (Miss.), cert. denied, ___ U.S. ___, 115 S.Ct. 2582, 132 L.Ed. 831 (1995).
Goodsell attempted to introduce Chancellor Dillard's affidavit to the Tribunal, but the Bar opposed its admission on the ground that they were not given the opportunity to cross-examine. The objection was sustained, and Goodsell proffered Dillard's affidavit into evidence. The gist of that affidavit was that Dillard concurred with Robinson. We can not say with certainty that the Tribunal did not consider the recommendation of Chancellor Robinson as to punishment. We know that they did not consider the recommendation of Chancellor Dillard but it would have been cumulative even if they had. We do know that this Court has considered in its deliberations not only the recommendation of Chancellor Robinson and Chancellor Dillard but also the punishment imposed by Chancellor Robinson and Chancellor Dillard.
This assignment is without merit.

III.

Did the Tribunal err in imposing a six-month suspension against Goodsell?
Goodsell requests us to reduce his punishment to a public reprimand. The Bar urges us to increase the suspension partly because Prisock received an eighteen month suspension. However, sanctions for violations of these rules are considered on a case-by-case basis. Mathes v. Mississippi Bar, 637 So.2d 840, 846 (Miss. 1994). We can impose sanctions that are more or less severe than those of the Tribunal. Id. at 846. The following criteria have developed through Mississippi case law in reviewing sanctions for misconduct: "(1) the nature of the misconduct involved; (2) the need to deter similar misconduct; (3) the preservation of the dignity and reputation of the profession; (4) the protection of the public; and, (5) the sanctions imposed in similar cases." Attorney R., 649 So.2d at 824-25; see also Mathes, 637 So.2d at 846 (citing Fougerousse v. Mississippi State Bar Ass'n, 563 So.2d 1363, 1366 (Miss. 1990)).
When imposing the sanctions, this Court will also consider the American Bar Association's guidelines, specifically Standard 3.0 which considers: "(a) the duty violated, (b) the lawyer's mental state, (c) the actual or potential injury resulting from the misconduct, and the existence of aggravating or mitigating factors." L.S. v. Mississippi Bar, 649 So.2d 810, 815 (Miss. 1994) (quoting Mississippi Bar v. Attorney ST, 621 So.2d 229, 233 (Miss. 1993)).
This Court also looks to similar cases as a factor in determining appropriate discipline. Mississippi Bar v. Mathis, 620 So.2d 1213, 1222 (Miss. 1993). Goodsell's misconduct involved deceit. Such misconduct in the past has warranted suspension. Mathis, 620 So.2d at 1222 (imposing a one year suspension for violations under the Code and the Rules which was increased from the Tribunal's recommended public reprimand); Mississippi State Bar v. Smith, 577 So.2d 1249 (Miss. 1991) (suspending an attorney for sixty days for deceiving the court by filing a false acknowledgment of the bank's receipt of settlement funds); Goeldner v. Mississippi State Bar Ass'n, 525 So.2d 403 (Miss. 1988) (two-year suspension for attorney who misrepresented to the court on amount of fees *13 due and number of hours worked for a client). "The most important consideration in imposing sanctions is that the punishment be sufficient to `vindicate in the eyes of the public the overall reputation of the Bar.'" Mississippi Bar v. Hall, 612 So.2d 1075, 1078 (Miss. 1992) (quoting Mississippi State Bar Ass'n v. A Mississippi Attorney, 489 So.2d 1081, 1084 (Miss. 1986)); see also Attorney R., 649 So.2d at 824. Given the number and extent of Goodsell's violations Goodsell is suspended from the practice of law for a period of one hundred eighty days.
The Tribunal's finding that Goodsell violated Rule 4.1(b) is reversed and rendered.
The Tribunal's finding that Goodsell violated Rules 3.3(a)(4), 3.3(d), 4.1(a) and 8.4(a), (c) and (d) is affirmed, and Jesse B. Goodsell will be suspended from the practice of law for the period of one hundred eighty days.
AFFIRMED IN PART; REVERSED AND RENDERED IN PART; JESSE B. GOODSELL a/k/a J.B. GOODSELL IS HEREBY SUSPENDED FROM THE PRACTICE OF LAW FOR A PERIOD OF ONE HUNDRED EIGHTY (180) DAYS.
PRATHER, P.J., and BANKS, SMITH and MILLS, JJ., concur.
DAN M. LEE, C.J., dissents with separate written opinion joined by McRAE, J.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, C.J., and ROBERTS, J.
PITTMAN, J., not participating.
DAN M. LEE, Chief Justice, dissenting:
Today this Court is suspending Jesse B. Goodsell's license to practice law for a period of 180 days. Because I believe the punishment of suspension imposed by the majority is too harsh under the circumstances, I respectfully dissent.
In cases involving disciplinary matters, this Court reviews the entire record, findings and conclusions of the Complaint Tribunal and renders such an order as we deem appropriate. In view of the particular facts and circumstances involved in the case sub judice, I would judge this case in accordance with this Court's reasoning found in Vining v. Mississippi State Bar Ass'n, 508 So.2d 1047 (Miss. 1987), and Pitts v. Mississippi State Bar Ass'n, 462 So.2d 340 (Miss. 1985). Accordingly, I agree with Judge Stuart Robinson that the appropriate sanction for Goodsell's conduct is a public reprimand.
McRAE, J., joins this opinion.
McRAE, Justice, Dissenting:
I agree with Chief Justice Dan Lee that suspending Goodsell's license to practice law for a period of 180 days is too harsh under the particular circumstances of this case. The appropriate sanction for his conduct is a public reprimand, or at best, no more than a two month suspension. Goodsell was already suspended from the practice of law in Division 1 and 2 of the Fifth Chancery Court District for approximately one year. This was a substantial penalty considering the fact that ninety percent of Goodsell's practice was involved with the Hinds County Chancery Court.
To be consistent with the decisions of Pitts v. Mississippi State Bar Ass'n, 462 So.2d 340 (Miss. 1985), and Mississippi State Bar v. Smith, 577 So.2d 1249 (Miss. 1991), Goodsell should not be suspended from the practice of law for more than two months. The attorney in Pitts delayed the deposit of his client's insurance check into a savings account despite a court order requiring him to do so nine years earlier. 462 So.2d at 341. This Court determined that the attorney's behavior constituted outright deception, but we nevertheless concluded that the chancery court's imposition of a 180 day suspension was unduly harsh. Id. at 343. The punishment was reduced to a thirty (30) day suspension and a public reprimand. Id.
This Court held that the appropriate punishment in Smith was a sixty (60) day suspension and a period of probation following Smith's reinstatement. 577 So.2d at 1253. Smith had deposited funds from a wrongful death settlement into a personal account and distributed money to beneficiaries without permission from the court. Id. at 1251. This Court found Smith's conduct more egregious than the conduct in Pitts because *14 Smith not only disobeyed the court, but "went to great lengths to deceive the court" by falsifying documents in the process. Id. at 1252. In that case of blatant fraud, this Court set the length of suspension only at sixty (60) days. Id. at 1253.
The majority has imposed a period of suspension which greatly exceeds the punishments imposed in Pitts or Smith even though Goodsell's misconduct clearly did not rise to the level of deceit found in those cases. This inconsistency is intensified by the fact that Goodsell was already suspended from practicing in the chancery court for approximately one year. Accordingly, a public reprimand, or a two month suspension at the most, should be the appropriate punishment for Goodsell under the particular circumstances of this case.
LEE, C.J., and ROBERTS, J., join this opinion.