809 So.2d 582 (2000)
Clencie L. COTTON
v.
The MISSISSIPPI BAR.
No. 1998-BA-01488-SCT.
Supreme Court of Mississippi.
July 27, 2000.
Rehearing Denied October 5, 2000.
*583 Jack F. Dunbar, Thomas J. Suszek, Walter Alan Davis, Saltillo, Attorneys For Appellant.
Michael B. Martz, Christina Jacqueline Kelsey, Jackson, Attorneys For Appellee.
EN BANC.
PRATHER, C.J., for the Court:

INTRODUCTION
¶ 1. Attorney Clencie L. Cotton represented Phyllis Evans in a personal injury case arising out of an automobile accident, and this case was eventually settled. From the settlement money, Cotton deducted both his attorney's fee and the amount of Evans medical bills, and disbursed the rest to Evans. Thereafter, Cotton failed to pay the medical bills, and Evans' medical provider sued her to collect payment of those bills. Cotton eventually paid Evans' bills, and the lawsuit was dropped. Thereafter, Evans filed a Bar complaint against Cotton with the Mississippi Bar, resulting in a formal complaint being filed by the Bar. Cotton failed to appear and defend himself in the disciplinary proceedings and was disbarred by the Complaint Tribunal. He now appeals to this Court, asserting that although some punishment is justified, disbarment is too harsh.

STATEMENT OF THE CASE
¶ 2. In 1996, Clencie L. Cotton represented Phyllis Evans in a personal injury case, which was eventually settled for $10,000. On August 22, 1996, Evans signed the disbursement sheet, and Cotton divided the $10,000 in the following manner: kept $3,333 as his attorney fee; kept $2,846, the amount of Evans' medical bills; and disbursed the remaining $3,821 to Evans. However, Cotton never forwarded any part of that $2,846 to Evans' medical provider (hereinafter "creditor"). According to the Tribunal's Finding of Fact, the creditor tried to contact Cotton regarding the unpaid medical bills, but Cotton advised them not to harass him. According to the Assistant General Counsel's Investigatory Report, Cotton could not recall if the creditor contacted him requesting payment of the medical bills. The creditor eventually turned its account over to a collection agency, and in January, 1997, Evans was sued in Marshall County Justice Court for the unpaid medical bills. Because of Justice Court jurisdictional limits, the creditor sued for $2,499 plus $44.00 court costs, for a total of $2,543. Between the time Evans received her summons, until she was to appear in court on January 28, she could not get in touch with Cotton. Evans called him and left messages several times during this period, but she never heard back from him. When she appeared in court, she learned that Cotton had obtained a continuance in her case, although she had not asked him to do so or even spoken to him about representing her in the creditor's lawsuit. Cotton contacted Evans on February 6, 1997, and *584 advised her that he had not paid her medical bills because he had used the money for other purposes. He said that he applied the money towards an unrelated case and office overhead. On February 7, Cotton obtained a second continuance in the Evans case. Evans still had not asked him to represent her in the matter. On February 11, Cotton paid the creditor $2,543, and paid Evans $347 (the difference between the $2,846 initially retained by Cotton for the medical bills and the $2,499 sought in Justice Court by the creditor). This payment was made from Cotton's regular operating account, as he previously admitted transferring the $2,846 in question from his escrow account into his regular operating account. As of February 11, 1997, the dispute between the creditor and Evans was over.
¶ 3. On October 13, 1997, Evans filed a bar complaint against Cotton which the Mississippi Bar, which he answered two (2) weeks later. By letter to Evans dated February 17, 1998 (53 weeks after Cotton paid the outstanding medical bills), Cotton stated that he had received notice that a hearing concerning the creditor situation was pending before the Bar Committee, and he expressed his regret over the matter. An investigatory hearing was held on March 2, 1998, and Cotton appeared and testified. A formal complaint was filed on May 13, 1998, and although Cotton was forwarded a letter stating that a formal complaint was forthcoming, he failed to return the acknowledgment accompanying said letter. Cotton was served with process on July 1, 1998, to which he never filed an answer. Cotton subsequently failed to respond to a August 19, 1998, letter informing him that the Bar was going to file a Motion for Entry of Default against him. He also failed to respond to Notice of the hearing to consider the Default Motion. The hearing on the Bar's Motion for Entry of Default was held before the Tribunal on August 28, 1998. As previously mentioned, Cotton failed to appear at this hearing. Counsel for the Bar stated that they had no knowledge of Cotton's personal life, and consequently, no idea why he failed to respond to the action being taken against him. Cotton does not contend that he suffered from diminished mental capacity, or any other physical or emotional problems in this case. Cotton previously had two (2) complaints filed against him, however, both were dismissed without any disciplinary action being taken against him. The subject matter involved in those two (2) prior complaints is unknown. After hearing the evidence presented by the Bar and prior to handing down its ruling, the members sitting on the Complaint Tribunal tried unsuccessfully to reach Cotton by telephone. The Tribunal found that Cotton violated the following Mississippi Rules of Professional Conduct:
MRPC 1.2, providing, in part, that a lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued;
MRPC 1.3, providing that a lawyer shall act with reasonable diligence and promptness in representing a client;
MRPC 1.4, providing that a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information, and a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation;
MRPC 1.15, which sets out the conditions for a lawyer holding property for a client; and

*585 MRPC 8.4(a) and (d), providing that it is professional misconduct for a lawyer to violate or attempt to violate the rules of professional conduct, to engage in conduct involving dishonesty, fraud, deceit or misrepresentation, or to engage in conduct that is prejudicial to the administration of justice.
The Tribunal granted the Default Judgment, and recommended to this Court that Cotton be disbarred.
¶ 4. In appealing to this Court, Cotton admits that he erred in transferring the settlement money from his escrow account to his general operating account. He further admits that he failed to pay Evans' medical bills in a timely manner. However, Cotton claims that these things occurred out of simple negligence and raises the following issue for this Court's consideration:
Although some form of punishment is appropriate in this situation, the imposition of disbarment, the ultimate sanction in a Bar disciplinary proceeding, is too harsh under the facts of this case

LEGAL ANALYSIS
¶ 5. "This Court has exclusive jurisdiction of matters pertaining to attorney discipline and reinstatement, and this Court is the ultimate judge of matters arising under the Rules of Discipline for the Mississippi Bar." Broome v. Mississippi Bar, 603 So.2d 349, 354 (Miss.1992). When reviewing disciplinary matters this Court, "reviews the evidence de novo, on a case-by-case basis, sitting as triers of fact, and no substantial evidence or manifest error rule shields the Tribunal from scrutiny." Asher v. Mississippi Bar, 661 So.2d 722, 727 (Miss.1995) (quoting Underwood v. Mississippi Bar, 618 So.2d 64, 66-67 (Miss.1993)). "[This] Court may impose sanctions either more or less severe than the Complaint Tribunal...." Broome, 603 So.2d at 353 (citing Mississippi State Bar v. Strickland, 492 So.2d 567 (Miss. 1986)).
¶ 6. In Pitts v. Mississippi State Bar Ass'n, 462 So.2d 340, 343 (Miss.1985), this Court stated the following:
The theory behind punishment imposed as the result of Bar disciplinary proceedings is that the punishment, like a criminal sanction, serves a three-fold purpose. First, there is the obvious intent to punish the wrongdoer to the degree that the sanction is appropriate for the offense. Secondly, many theories on the role of sanctions recognize their utility as a deterrence to further violations both on the part of the immediate offender and the general community. Finally, sanctions have a definite role in reinforcing the confidence of the general public in the ability of society to govern itself. This third role is particularly important in regard to Bar disciplinary proceedings because our profession assumes the responsibility of governing its members. Therefore, public confidence and faith in the integrity of the entire Bar is dependent upon our willingness to impose appropriate sanctions on our members who have violated the Code of Professional Responsibility.
¶ 7. Our case law has established that the following criteria be used in determining what sanctions to impose in an attorney discipline case:
1. the nature of the misconduct involved;
2. the need to deter similar misconduct;
3. the preservation of the dignity and reputation of the profession;
4. the protection of the public;
5. the sanctions imposed in similar cases;
6. the duty violated;
7. the lawyer's mental state;

*586 8. the actual or potential injury resulting from the misconduct; and
9. the existence of aggravating or mitigating factors.
Rogers v. Mississippi Bar, 731 So.2d 1158, 1171 (Miss.1999).

The duty violated

The nature of the misconduct involved
¶ 8. The Tribunal found that Cotton (1) failed to abide by Evans' decisions related to her personal injury claim and obtained continuances in her Justice Court case without her consent (MRPC 1.2), (2) failed to exercise reasonable diligence in handling Evans' personal injury case (MRPC 1.3), (3) failed to keep Evans reasonably informed about her personal injury case (MRPC 1.4), (4) failed to properly handle funds related to Evans' personal injury case (MRPC 1.15), and (5) committed professional misconduct by violating the rules of professional conduct (MRPC 8.4 a,c,d). Although none of these violations are insignificant, the most serious violation committed by Cotton was his improper handling of the settlement money. He acknowledged transferring the money for the medical bills from his escrow account to his general operating account. He also acknowledged his failure to pay those medical bills in a timely manner. Additionally, through the testimony of Evans, the Complaint Tribunal heard evidence that Cotton used this money for purposes related to his law practice, but unrelated to Evans' case. When Cotton finally paid the medical bills, the funds used for said payment came from his general operating account.
¶ 9. "Generally, violations of Rule 1.15(b) are found where an attorney has commingled, converted, or otherwise mishandled a client's money." Mathes v. Mississippi Bar, 637 So.2d 840, 847 (Miss. 1994). "The moment a lawyer succumbs to a temptation to appropriate for his own use any of his client's money entrusted to his safekeeping is the moment he shows his unfitness to be a practicing lawyer. Such a character flaw should not be tolerated. Acts such as [Cotton's] cannot be tolerated by members of our profession." Mississippi State Bar v. Odom, 566 So.2d 712, 716 (Miss.1990). The mishandling of a client's money by an attorney has often been referred to as the "cardinal sin" for lawyers.

The need to deter similar misconduct

The preservation of the dignity and reputation of the profession

The protection of the public
¶ 10. In Pitts, this Court held that two of the three purposes behind punishment in Bar disciplinary matters is to deter future misconduct similar to that at hand, and to preserve the reputation of the profession in the eyes of the public. Obviously there is an important need in protecting the public from the type of misconduct present in this case, and one way to do that is to levy penalties in situations like this which will deter future conduct of a like character.

The lawyer's mental state
¶ 11. As previously mentioned, the Bar has no information regarding Cotton's personal life, including his financial situation, any substance abuse problems, or his mental state. Cotton does not contend that he suffered from diminished mental capacity or any other physical or emotional problems in this case.

The existence of aggravating or mitigating factors

The actual or potential injury resulting from the misconduct
¶ 12. As Cotton failed to appear before the Complaint Tribunal, the record is void *587 of any mitigating factors in his favor. However, he may present such factors for the first time to this Court, as the Supreme Court may consider mitigation evidence not presented to a Complaint Tribunal. Vining v. Mississippi State Bar Ass'n, 508 So.2d 1047 (Miss.1987).
¶ 13. Prior to this case, Cotton had never been disciplined by the Bar. "The ABA Standards do list the absence of a prior disciplinary record as a mitigating factor, ABA Standard 9.32(a), but the presence of prior disciplinary offenses is listed as an aggravating factor, Standard 9.22(a). Thus, this mitigating factor is not especially strong since it consists in the mere absence of a certain aggravating factor." Foote v. Mississippi State Bar Ass'n, 517 So.2d 561, 565 (Miss.1987).
¶ 14. By paying the medical bills owed to the creditor and forwarding the remaining money to Evans, Cotton eventually made restitution to all parties in this case. This situation is similar to that in Clark, where this Court stated "[t]he appellant further argues that the conservatorship suffered no loss because all principal and interest had been restored to the estate. However, restitution by an attorney of funds previously misappropriated does not mitigate the offense, particularly where the restitution has been made under pressure." Clark v. Mississippi State Bar Ass'n, 471 So.2d 352, 357 (Miss.1985) (citing Smiley v. Board of Com'rs of Alabama State Bar, 286 Ala. 216, 238 So.2d 716 (1970)).
¶ 15. Cotton made no attempt to mislead the Bar or any Court, and he has candidly admitted his mistakes in this matter. "Under the ABA Standards, full and free disclosure to the disciplinary board or cooperative attitude toward the proceedings is a mitigating factor, Standard 9.32(e), and bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency is an aggravating factor, Standard 9.22(e)." Foote, 517 So.2d at 565. However, "the mere absence of an attempt by the attorney to mislead the Bar or the Court as to what was done, particularly where there is a default judgment, is a neutral factor." Id.

The sanctions imposed in similar cases
¶ 16. "The commingling and misappropriation of clients' funds is a grave breach of professional duties, and has been held, under some circumstances, to justify disbarment." The Mississippi Bar v. Gardner, 730 So.2d 546, 548 (Miss.1999). Previously, this Court has imposed penalties of both suspension and disbarment for conduct similar to that in the case sub judice.
¶ 17. In Mississippi State Bar Ass'n v. Strickland, 492 So.2d 567 (Miss.1986), an attorney represented an estate in a lawsuit, eventually obtaining a judgment of nearly $40,000 in favor of the estate. Rather than collecting his attorney fee and disbursing the remaining proceeds to the estate, Strickland kept all the money, deposited it into his personal account, and used it for personal expenditures. The estate eventually obtained a judgment for $24,000 against Strickland (the lawsuit proceeds minus attorney fees), but Strickland failed to pay said judgment. The estate then filed a summary motion seeking payment of the $24,000, to which Strickland responded with a Motion to Dismiss. In support of his Motion to Dismiss, Strickland presented to the court a forged memorandum which purportedly assigned all of the lawsuit proceeds to him. Strickland finally paid the judgment fifteen (15) months after it was issued. For misappropriating client funds, inexcusably failing to satisfy a judgment in a timely manner, and attempting to perpetrate a fraud on the court, Strickland was suspended from the practice of law for three (3) years. In so ruling, this Court recognized the following *588 as mitigating factors in Strickland's favor: (1) he suffered from alcoholism, (2) he had marital problems, (3) he served honorably in the Korean Conflict, (4) he had previously served as a public official of this state without incident.
¶ 18. In Mississippi State Bar v. Odom, 566 So.2d 712 (Miss.1990), an attorney represented the co-executrices (who were also the sole devisees) of an estate which had, as its primary asset, the residence of the decedent. The chancery court approved the sale of the residence, and ordered that after the expenses of the sale were paid off, Odom was to establish a trust account and deposit the remaining proceeds therein. However, upon receiving a check for over $45,000 from the sale, Odom deposited the money in his already existing nontrust account. From this account, Odom paid personal expenses, as well as business expenses not related to the estate. Odom subsequently presented the co-executrixes with an "accounting sheet" which showed the estate to have a final value of $28,234, and on that same day, wrote them each a check for $14,117. The checks were drawn on the same non-trust account in which the sale proceeds were originally deposited, but the account was overdrawn by $55.03 when the checks were written. Using the pretext of needing to get court approval for the disbursement, but knowing that the checks would not be honored because of insufficient funds, Odom asked the co-executrices to hold the checks for a couple of weeks before cashing them. One of the co-executrices ignored Odom's request, and upon cashing her check, it was dishonored for insufficient funds. For failing to abide by the chancery court's order regarding the establishment and use of a trust account, commingling and misusing the estate's funds, misleading his clients with regard to needing court approval of disbursement of their inheritance, and knowingly writing bad checks, this Court, in a 5-3 decision, suspended Odom from the practice of law for three (3) years.
¶ 19. In Reid v. Mississippi State Bar, 586 So.2d 786 (Miss.1991), an attorney represented some of the heirs of Muriel Reagan, who was payee of a promissory note. During her lifetime, Reagan received monthly payments under the promissory note; however, after her death, the makers of the note wished to pay off the remaining balance with a lump sum payment. On February 14, 1986, the makers paid off the promissory note by delivering a check for $10,362.45 to Reid, which he deposited into his trust account. On February 28, 1986, his trust account had a balance of $3,904.41, although he had, as of that date, not distributed any of the $10,362.45 to Reagan's heirs. On July 8, 1986, Reid mailed separate checks, drawn on his trust account, to each of Reagan's heirs. One of the checks was deposited and returned because of insufficient funds, and that heir finally received her money approximately three (3) weeks later. Reid subsequently admitted using the Reagan heirs' money for his own purposes. Notwithstanding that Reid had previously never been the subject of a Bar complaint, and that he admitted his mistakes and expressed remorse, this Court ruled that he be disbarred for the unauthorized conversion of funds from his trust account.
¶ 20. In Foote v. Mississippi State Bar Ass'n, 517 So.2d 561 (Miss.1987), Foote served as the closing attorney for the sale of real property. The buyer presented Foote a check for $15,976, which included $10,396, the payoff of the First Deed of Trust on the property. Foote gave the sellers their share of the proceeds, keeping the $10,396 with the agreement that he would pay off the mortgage on the property. Several months later, the buyer attempted to sell the property, only to learn that the mortgage had yet to be paid off. *589 Upon his discovery, the buyer and his real estate agent repeatedly called Foote, but none of their calls were ever returned.
¶ 21. The buyer was forced to pay off the mortgage himself, for which Foote eventually reimbursed him. Noting that there were no mitigating factors in Foote's favor, this Court ordered that he be disbarred for misusing his client's funds.

CONCLUSION
¶ 22. In prior cases dealing with an attorney's misusing client funds, this Court has imposed as punishment either a three (3) year suspension or disbarment. Recognizing that there is precedent supporting either sanction being handed down in the case sub judice, this Court finds that Cotton should be disbarred for his actions in dealing with Evans. The fact that Cotton had not previously been disciplined by the Bar is not an especially strong mitigating factor and that he eventually made restitution to all parties involved is not a mitigating factor at all. Additionally, the fact that he made no attempt to mislead the Bar or this Court, and that he candidly admitted his errors, is also not a mitigating factor in his favor. Therefore, no significant mitigating factors weigh in Cotton's favor.
¶ 23. Under Odom, Cotton's fitness to practice law became questionable once he converted his client's funds for his own use. That he made no attempt to defend himself once the Bar filed a formal complaint raises additional concerns regarding his fitness to practice law. If he does not tend to his own legal matters, will he tend to the legal matters of his clients? In the case of Evans, he did not. Therefore, disbarment is the sanction which would most appropriately punish Cotton, deter attorneys from acting in the same manner in the future, and restore public confidence in the Bar. Accordingly, this Court adopts the recommendation of the Complaint Tribunal and disbars Clencie L. Cotton from the practice of law in the State of Mississippi.
¶ 24. CLENCIE L. COTTON IS HEREBY DISBARRED FROM THE PRACTICE OF LAW AND SHALL PAY ALL COSTS.
PITTMAN, P.J., MILLS, WALLER, COBB AND DIAZ, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. BANKS, P.J., AND SMITH, J., NOT PARTICIPATING.
McRAE, J., dissenting:
¶ 25. While the majority admits that Clencie L. Cotton ("Cotton") has not previously been disciplined[1], has made restitution to all parties involved and has candidly admitted all of his errors, it appears to give unwarranted weight to the fact that Cotton made no attempt to defend himself against the allegations found in the complaint at the default judgment hearing.[2] However, "involvement in the bar proceedings" is not a factor enumerated by this Court to be considered in attorney misconduct cases. In fact, in Vining v. Mississippi State Bar, 508 So.2d 1047, 1048 (Miss.1987), this Court dismissed the contention that an attorney was being "punished for his failure to appear before the Complaint Tribunal rather than his neglect of his client's case" and imposed a six-month suspension. While some type of *590 punishment is in order, I would suspend for three years rather than disbar. Accordingly, I dissent.
¶ 26. The Complaint Tribunal found that Cotton violated rules of conduct set out in the MRPC, granted a default judgment against Cotton and recommended to this Court that he be disbarred. While Cotton admits to transferring settlement funds from a client's ("Evans") escrow account into his own operating account and failing to pay Evans's medical bills in a timely manner, he argues that these occurrences took place due to simple negligence and that the imposition of disbarment is too harsh.
¶ 27. This is not a case of fraud or open and outright deception. Instead, Cotton is only guilty of acts of inadvertence which do not justify disbarment, especially in the absence of prior bar discipline. Cotton willingly admitted that he was negligent in failing to pay the medical care provider in time and freely did so when notice was given. The majority cannot and has not disputed the fact that this Court has consistently imposed sanctions less than disbarment in cases of simple neglect and inadvertence. See, Mississippi Bar v. Pels, 708 So.2d 1372, 1377 (Miss.1998)(single instance of commingling of funds warranted only a 30 day suspension); Mathes v. Mississippi Bar, 637 So.2d 840, 842 (Miss.1994)(attorney's failure to timely pay $1,215.52 of client funds to third party justified six month suspension from the practice of law); Hall v. Mississippi Bar, 631 So.2d 120, 127 (Miss.1993)(90 day suspension warranted where lawyer's inattentiveness to case resulted in $9,768.07 judgment against client); Pitts v. Mississippi State Bar Ass'n, 462 So.2d 340 (Miss. 1985)(30 day suspension and public reprimand where attorney failed to account for client funds and misrepresent to client and the court the location of funds).
¶ 28. In the present case, Cotton sent a letter to the Tribunal before the effective date of disbarment which read as follows:
Dear Judge Richardson,
I am in receipt of the Default Judgment with respect to the above mentioned matter and do not contest the Default Judgment. I have contacted Ms. Kelsey, the Assistant General Counsel, to request that I be allowed to make a very brief presentation to yourself and the Committee prior to the imposition of discipline.
I have not chosen to waste your and the committee's time contesting the allegations of the pleadings because they are essentially true. Nevertheless, it was never my intention not to pay Dr. Medlin the monies withheld from Mrs. Evans' settlement and would never have allowed this matter to go on in the Justice Court were we able to make contact with each other concerning those proceedings.
I am very much aware of the things that I did wrong with regard to communicating with my client as well as misuse of the Trust Account.
I have, since this matter arose, begun to structure my practice and improve my office procedures, such that this problem should not happen again in the future.
I would request the opportunity to appear personally before your committee prior to your imposition of discipline in this case, if at all possible.
¶ 29. Over one week later, the Tribunal executed its opinion and order recommending Cotton's disbarment. The above letter makes it clear that, while Cotton did not wish to contest the allegations against him, he also did not understand that punishment was to be imposed at the default judgment hearing. Cotton was not alone in this thinking. A member of the Tribunal *591 was himself not certain of the scope of the proceeding and was forced to ask, "What's the consequence of the motion for default? Do we decide the punishment [now]?"
¶ 30. What Cotton did desire to do was to address the Tribunal regarding punishment. He was never given that opportunity. While I agree that we should strive to gain public confidence in the Bar and that some form of punishment is warranted in this case, the majority's implication that Cotton committed fraud or some other similar offense is unfounded. Instead, Cotton, admittedly due to his own negligence, inadvertently failed to pay a bill and did not catch his error for a five-month period. Upon learning of his mistake Cotton rectified the situation. What else did this Court expect Cotton to do? Such actions warrant a suspension, but not disbarment. Accordingly, I dissent.
NOTES
[1] Cotton has practiced law in Holly Springs, Mississippi, for over ten years and during that time has never been the recipient of Bar sanctions.
[2] "If he does not tend to his own legal matters, will he tend to the legal matters of his clients?"